Well, your honors, if it does please the court, my name is Stephen Larson. I represent Enterprise Services, LLC, the appellant in this case. Your honors, KST, and quite frankly, the district court, has treated this case as a simple collections case. And unfortunately, by placing blinders on this, ignoring the equitable conduct, which is at the heart of this case, several serious errors were made. Essentially, we've identified three compounding layers of error in this case. It's kind of like a house of cards or a stack of locks, but the first layer of error was in the court's erroneous designation of the choice of law. But the court, the district court, failed to honor the party's choice of law by declining to apply New York law and applying California law in place. And that resulted in what we believe the misapplication of certain statutes of limitations to our counterclaims and took out much of that equitable issues that I was discussing. Second, the court erroneously denied ES's, Enterprise Services, motion for summary judgment. And to compound that error, it's Sua Sponte issued summary judgment in favor of KST. Again, using the blinders that I referenced. And finally, the compounding all of that, the court entered judgment ordering damages along with an 18% prejudgment interest rate that was based on non-admissible hearsay affidavits and despite our demand and right to a jury trial on that issue. So at the end of the day, we believe this needs to be reversed and remanded back down to the district court. I was gonna go through each of those three errors though in some greater detail. And the first focus is on this choice of law question. It's well settled as I'm sure the court is aware that in diversity jurisdiction cases, brought in the state, California, we looked at California law. And California has a very strong public policy favoring enforcement of choice of law provisions. That's been well-established by the California Supreme Court. We cite the Nedloyd decision. Nedloyd sets out an either or test. In order to enforce a choice of law provision, this court needs to find either that there is a substantial relationship or there was a reasonable basis to make that choice for the choice of law. Mr. Larson, can I just ask you, I don't wanna spend a lot of time on the choice of law question, but you don't contend that there was a substantial relationship between the parties in New York. That's off the table. Not at all. Absolutely. All we contend is that there was a reasonable basis and that the parties, these are two sophisticated parties who do business in many, many states. It was completely reasonable for Hewlett Packard Enterprise Services and KST to decide that New York, which is a well-established corporate law, it's evolved, it's mature, it's comprehensive, is the choice of law that's being applied here. Just like many times parties choose Delaware, they choose New York, this was a very reasonable choice. Is there any evidence in the record that this contract that was utilized here is sort of standard in their dealings with other subcontractors? There's no evidence in the record on that particular point, Your Honor, and I know that the KST cites to this 1-800 junk case which talked about the context of a franchise agreement, the fact that the same choice of law, Washington in that case, I believe, was used for all the different franchises was evidence of the reasonable choice and that Washington was the closest state. That's certainly a basis, but there is nothing in 1-800 junk or any other case that I've seen which requires that as an element. In fact, there are cases cited from, that we cite in our brief from California here, federal cases which upheld that the party's choice with their sophisticated parties is certainly a reasonable basis and that expectation should be upheld. Now, if we were to disagree with you on that point, what does that do under California law? How does that affect your statute of limitations argument? Well, it affects the statute of limitations in all of the instances except the misrepresentation counterclaim because the misrepresentation counterclaim, frankly, we think the court got wrong even under California law. California law is a three-year statute of limitation from the accrual of the claim. And here the claim did not accrual at the earliest when the damages element, which is an element of misrepresentation, arguably took place in December of 2014. And then in fact, our appeal was denied in March of 2015, but the counterclaims were filed in November of 2017. We may have been on notice as the district court found based on a subpoena that was issued sometime at mid 2014 that there was some investigation, but the misrepresentation counterclaim itself did not approve under clearly established California law until that damages element was triggered. And that was at the earliest in December of 2014. So even if this court were to apply California law, we believe the misrepresentation cause of action should not be dismissed. So we feel very strongly that New York law should apply and all of those counterclaims should be included. So let me ask you just one last question on this, Mr. Larson. What's your best case for applying New York law? Well, our best case is that under the two-prong test on the either or, that there is a clear reasonable basis for these two sophisticated parties who negotiated at arm's length to apply the mature law, of New York. This was a situation, there's certainly instances where we have used New York law and other contracts, but again, I'm going somewhat out of the record here. You know, this is not like they chose the law of the Virgin Islands or Guam or took an arrow and threw it at the map. Using New York law, just like using Delaware law is customary. And if this court were to decide, if any court were to decide that two sophisticated national companies that do work nationwide can't choose and then rely on that choice, that would be quite upsetting, I think, to contract law and to business transactions. I mean, this is not a reasonable selection. Yes, sir. So Mr. Larson, it's your position that two sophisticated parties agreeing on a choice of law provision is itself sufficient to establish a reasonable basis. Perhaps not entirely by itself, because I think the choice of law that they're selecting matters as well. I mean, again, if this was a situation like we saw in 1-800-TRUMP, where they were choosing the state of Washington law, or I use the example of choosing, say, territory of Guam law, that might be true a little bit. But New York law and the attributes of New York law, much like the attributes of Delaware law, is another factor which I think affects the reasonability here. And it's a well-developed- When Judge Paez asked you for your best case, you didn't cite authority. And I think that's what he was looking for. At least that's what I would be looking for. Because my concern is that the standard you're proposing would eliminate, essentially, the second prong under the restatement. And any time the parties make a choice of law in their contract, we'd have to deem it reasonable without anything else. And is there any case law that would suggest that that's the case? Well, I would cite the court to the JMP Securities LLP versus Altair Nanotechnologies case. This was a district court case by Judge Conti up in the Northern District. And it's at 2012 Westlaw 892157. For some reason, it was not reported in FSOP, but it is a published opinion. So that case also had a venue provision as well. There was a distinction factor that the parties also selected venue. They did indeed. That is correct. But the analysis of the court under the Nedloy test, I think, focused largely on the reasonable basis prong. And the court found that the consent of the parties in that case to that particular law formed that reasonable basis. I understand the argument that it's simply, it needs to be something more. That's kind of a rational basis test. What is reasonable here? And I just think, given the law that we're dealing with, that it was selected, that was relied upon, and the sophistication of the parties, I think that it's not just any two parties. If a small dealer in Alhambra and somebody, an individual in Pasadena, were negotiating a contract and they picked South Carolina law. Well, the mere fact that they agreed to it, that would not be enough. But the nature of the parties, the nature of a law, the nature of the work that's being performed under the contract, all of that, I think, factors into this calculus. And I think that forms that reasonable basis, particularly when you couple that with the, I don't want to say the word presumption, but the strong policy of California dating back to the Nedloy case of favoring and honoring the expectation that the parties have when they enter into these choice of law provisions. All of that together, I think, clearly establishes the reasonable basis. And then, of course, you go to the next element and there's no conflict with any fundamental California policy. But you're treating this, as I understand your argument, as a legal issue rather than a factual issue. And so you're suggesting that we would make this determination based solely on the argument of counsel that, gee, this is a reasonable choice because the parties are sophisticated and this is a choice they made. It doesn't, it seems that there's some, there's a combination of fact and law here and that perhaps the parties can establish this with a declaration from a knowledgeable person about their practices and why they choose to form, that that would be evidence that would establish that it was a reasonable basis. Well, I think our argument goes a little further than that. It's not just that this is an issue we're asking the court to review. Judge Otero, in finding this, I mean, the language that he used in his order essentially conflated the either or requirement under Nedloy, and that's part of the problem as well. And that was erroneous. So at a minimum, we would ask for it to be remanded for that test to be appropriately addressed because what the court did in its order is it talked about the lack of a relationship, frankly, to New York as part of that basis. And that is what we think the court did was conflate those two elements. But again, to underscore the question, raise a point in the question implicitly raised by Judge Pius, even under California law, the misrepresentation should not have been discussed. Did you want to move on to your second issue? Your time is running out. Yes, well, but the second issue is the compounding error of the erroneous MSJ rulings. And certainly we think that the narrow breach of contract that the court looked at with respect to denying our motion for summary judgment was mistaken. There are many elements, and we're set forth these at length in our papers, which clearly establish the other provisions of the contract that were breached. Not just the, this is not just a purchase order invoice type of case. From the get-go, KST understood that this was all about servicing the NASA contract. That's written directly into the statement of work. It's written directly in to the master agreement. And both sides certainly understood that. There are at least four critical provisions, and I'll just briefly mention those that reflect this. Going first to the statement of work, 1.0, the project scope, both the purpose and the project summary clearly make it that the statement of work is issued by Hewlett Packard Environmental Services in support of the NASA ACES project. The SOW describes the services to be provided by the supplier, in this case, KST, to HPES in support of that program. So they certainly knew that the rules of that program, which they well understood, remember, they're the ones that came to ES saying, hey, we can help you with this ACES program. They certainly understand how material that was. Section 10.0 of the SOW specifically mentions the role that DME, who ES brought to the table, was to play. The suppliers will work in conjunction with DME to deliver the ACES product catalog solution. Then we have, in the RMA, the Resale Master Agreement, you have the purchase order requirement. KST, under Section 4.2, was not committed to do any work without a purchase order. They knew that, and this secret agreement that they had set up- So, let me ask you just one question along this line of argument. As I understand, so the work that KST, that you're upset with KST for undertaking is work that it subcontracted to do for, what's the name of it? For DME? Yeah, DME, I'm sorry. For DME. Isn't that right? Right, no, that's not right at all. They were not subcontracting, they were actually doing the work that ES has asked to be done. They were doing work directly for ES, and they were taking the money out of the bank account. I mean, these are the equitable claims that we have. But the original agreement was between DME. Well, the original deal was between, well- DME and- Well, ES contracted with KST. They also were working with DME. These were two separate types of work that were supposed to be going on. But KST essentially took over the work that ES thought was being done by DME to fulfill its obligation under ACES. And KST and DME conspired effectively by the hidden bank accounts, the control of the bank accounts, the daily sweeps, all of that misconduct, as NASA ultimately, which disqualified everybody from this and caused all the problems here. They were doing this in contravention to the express terms of the contract between ES and KST. And that's why that should not have been granted, let alone the sua sponte motion for summary judgment adverse to ES. And your honors, I do know I'm running out of time, and I would like to reserve a little bit of time for- I'll give you some time for rebuttal, Mr. Larson. Thank you. All right. Okay. Well, in any event, and then the fourth provision, of course, in the RMA is the compliance with applicable law. And as evidenced by the NASA investigation, the suspension and all of that, clearly that term was breached as well by KST. So the motion for summary judgment brought by ES was wrongly decided by the court. But what really took this into the netherworld from our perspective was the sua sponte motion for summary judgment and ignoring the inability for us to be able to assert the various affirmative defenses, which are well supported by the record here. I mean, this is where the court really put the blinders on and failed to account or even give us a chance to respond with those. And I know there's the argument out there on waiver, and there's the argument out there that we did not replead these. We clearly pled them. We pled them in response to the initial complaint. We pled them in response to the first amended complaint. The second amended complaint, we filed a 12-6 motion. And the only thing that was survived after that was the breach of contract claim by KST. And it is that breach of contract claim to which we had filed the affirmative defenses in the first two rounds. So this notion that they were not on notice, that this is somehow prejudice, that's just wrong. And the district court, I don't know if it was a rush to complete the case or what it was, but just put these blinders on and ignored these critical issues. And that's a fundamental violation of due process. And then that was compounded by the trial damages, not having a trial on our damages, which are an element. Right, let's move on to your opposition here. And I'll give you some time for rebuttal, Mr. Walsh. Thank you, thank you, your honor. I'm gonna mute my... Okay. Good morning and may it please the court. My name is Nicole Rodriguez Van Dyke and I represent Appellees KST Data in Armando Camp. ES continues to claim that this is a complicated case involving investigations and investigations, but really at base, this is a simple case because it's a breach of contract case that involves two agreements between KST and ES. First KST statement of work pursuant to which KST was a subcontractor to ES under the NASA ACES contract. And the resale agreement between KST and ES that was entered shortly after the statement of work and which sets forth general terms that would govern certain purchase orders and statements of work between the parties. Where in the contract does it allow for this kind of arrangement between KST and DME? KST, the actual contracts between KST and ES say nothing about KST's ability to subcontract with another party pursuant to a completely separate agreement. The RMA specifically limits its scope in numerous provisions to purchase orders issued from ES to KST pursuant to the resale master agreement. And it further limits that to purchase orders between ES and KST that are in writing and reference the resale master agreement. ES's entire argument here is based on the fact that it didn't issue a purchase order to KST. And thus it concedes that KST's separate subcontract with DME has nothing to do with the resale master agreement. And it's just simply outside the scope of that contract. The district court got it exactly right when it recognized that as a matter of simple contract construction. KST succeeded on its contract claim because KST's contract claim was based on the resale master agreement. And there's no dispute that ES issued purchase orders to KST for certain services and equipment. KST provided all of those services and equipment and ES didn't pay it. And at that point, it was as simple as that. ES's only response to that was that they were entitled to withhold payment pursuant to the indemnification provision in the RMA. But the district court correctly concluded that that indemnification provision didn't reach conduct that was outside the scope of the RMA. And that's why ES's breach of contract claims failed for the same reason, because they weren't- Well, there was one question I could, you know, I was looking at the record. There was one piece of this I couldn't quite figure out is, at what point along the way did KST undertake the work for DME? After KST, so initially, KST's statement of work had contemplated that KST would perform managed print services. Early on, before any purchase orders were issued at all under the ACES contract, KST started preparing to perform that work, entered into some equipment leases, and did some site plans and those types of things. Ultimately, ES decided instead of issuing purchase orders to KST for managed print services, it would issue those purchase orders to DME and concedes that it expected KST to have some role in managing that, although no purchase orders were ever issued to KST for that purpose. So once DME received the purchase orders, DME decided to take the sensible business decision of subcontracting some of that work to a party that had already prepared to perform it. And so KST entered into a second tier subcontract with DME to perform that work. But again- You call that a reasonable business decision, but NASA certainly took a different view of that, didn't it? NASA, well, NASA did conduct an investigation and ES likely likes to talk about that frequently. But what ES forgets to mention is that NASA lifted KST's suspension. The Department of Justice ultimately dismissed the complaint that ES brings up and declined to file any charges. So at the end of the day, all of this talk about investigations and- Well, counsel, the fact that your principal wasn't criminally prosecuted doesn't mean that the contact wasn't, as the district court put it, unequivocally questionable and unsavory. So your brief says that KST provided these services for DME for a percentage of the fees that were paid. What was the percentage? I mean, was KST taking 99% of the amount of money ES was paying for these services? Was it 95%? Was it 10%? How much was- I apologize. Go ahead. I didn't mean to interrupt you. Initially, it was 99%. That was adjusted over time as KST did less of the work. But initially it was 99. DME agreed to pay KST 99% of what it received, but KST did 99% of the work. So how does anybody do that other than DME just being a front so that it will appear that everyone's complying with the regs that require certain, that contracts be awarded to certain businesses and certain groups? There's nothing in the regulations that govern an unrestricted contract like this one that prohibits a subcontractor from entering into second tier subcontracts for the work. There's no self-performance requirement in any regulation. And ES has never been able to point to one because it doesn't exist. And so there was nothing in the law that precluded this type of contracting arrangement. And in any event, ES's claims ultimately fail because there's nothing in the contract that deals with the RMA and the statement of work don't reach KST's performance of services under entirely separate contracts. And at base, this is a simple breach of contract case involving two agreements. So when you look at the facts, it would seem that ES might have chosen to bring an action against DME, but they didn't, or at least not that I can tell from the record. And I don't wanna guess too much as to what occurred, but it seems that perhaps DME is a shell, that it really doesn't exist and that there are no assets. Is DME a valid party, a company that could have been sued for these claims? Yes, DME was in fact initially sued for these claims. And ultimately, Mitch Evans, who was the principal of DME and DME were dismissed from the case. And DME was a functioning company that had partnered with HP before and which HP independently vetted before agreeing to subcontract with DME. So the indemnification provision, I think is somewhat troubling. And I don't understand why it wouldn't apply when it's language is so broad. So it's in the RMA section 10.1. And it says that ES can withhold payments from KST resulting from any act or omission. How is it that that's limited to the purchase orders or the scope of work for the contract when the indemnification provision is so broadly worded? And it includes additional sections that talk about breach of the agreement and breach of the contract. So it doesn't appear to be limited just to breach of contract. The indemnification provision, you're correct, it's not limited to just a technical breach of the contract, but it is limited to the scope of the RMA, which is limited to services provided pursuant to this agreement, meaning the RMA. And the scope of the RMA in sections 1.1 and 2.19 limit the reach of the RMA to purchase orders issued in writing under this agreement. So to get there, it's not in the indemnification provision. That's not in 10.1. We have to read different sections within the RMA to conclude that 10.1 is limited. Is that what you're saying? It does not expressly say that in 10.1, that's correct. But 10.1 must be read in connection with the contract as a whole. And the contract expressly limits its scope in section 1.1, which makes clear that the RMA only sets forth the terms and conditions under which KST will provide services to ES pursuant to purchase orders issued by ES to KST. Why doesn't New York law apply here? New York law doesn't apply under the Nedloyd test and the district court got it exactly right. The district court did not conflate any reasonable basis standard with a substantial relationship. The district court correctly considered the second prong of the Nedloyd test, which requires there to be a reasonable basis for the chosen law. And as the proponent of the choice of law provision, ES had the burden of establishing a reasonable basis. And ES put forth no basis whatsoever, reasonable or otherwise, for the choice of New York law in the contract. And ES doesn't even uniformly choose New York law in its contracts. The statement of work has no choice of law. The purchase orders choose Delaware law, the teaming agreements for the ACES contract choose Virginia law. And ES simply sets forth no basis. And it's telling when the court asked ES to set forth its best case, ES said its best case wasn't even in the record. And that really precludes ES's arguments here. So as I asked Mr. Larson, even if California law applies, I should say, as he argued, wouldn't the misrepresentation claim survive? No, your honor. Why not? When did the injury actually occur? Well, ES now asserts that its injury occurred in December, 2014. Of course, as set forth in the record, ES started withholding invoices, payment on KST's invoices as early as September, 2014. And pled in its pleading that it was aware of the relationship between KST and DME that it now disputes in August, 2014. More importantly, ES made a tactical decision in the district court never to assert that its claims were Thailand or California law and only urged the court to apply New York law. And having made that tactical decision, it can't come and complain about that now and raise new arguments in this appeal. It never contested the timeliness of its claims under California law. It never pled that its damages accrued in December, 2014. And it never sought leave to plead those facts. And ultimately, the district court doesn't abuse  ES waived those arguments. And in any event, it's claimed now that its damages didn't accrue until December, 2014 is belied by the record, which shows that it started withholding payments under the indemnification provision months earlier than that. Well, when did they... Go ahead and you're good. No, no, go ahead. Well, I'd like to hear in some of the time you have left, why we shouldn't be troubled by the district court having to respond to granted your mission for summary judgment that you didn't file and granting it without considering ES's affirmative defenses. Why is that? Why should that not be troubling to us? Because ES waived its affirmative defenses. The district court had settled all of the issues that needed to be settled to completely resolve this case by construing the agreements between the parties. Yes, I'm sorry. And does that make an appropriate setting for the court to grant a motion for summary judgment that was not filed, sua sponte? Yes, your honor. The court has... When a party moves for summary judgment on a claim, the court has discretion to enter summary judgment for the non-moving party on that claim sua sponte when the facts in the record before it show that there's no material disputes of fact. And here, that's exactly what happened because this is a contract construction case and the court construed the contracts and correctly determined that ES's claims were based not on the contract at all. And therefore, ES was not entitled to relief. But doesn't your argument depend... Your argument depends on the affirmative defenses having been waived, correct? Yes, your honor, but there's no question that the affirmative defenses were waived. This is not a case like some of those cited by ES where a party has discretion not to file a responsive pleading. The court ordered ES to file a responsive pleading and it didn't. So let me ask you this. I asked Mr. Larson, what was his best case? What's your best case here that says that, where they... Where, like here, where... ES filed an answer with counterclaims. I guess it was to the first amended complaint. Is that what it was? Yes, your honor. But not to the second amended complaint? What case, what circuit case says that that constitutes a waiver or what rule of civil procedure says that that constitutes a waiver? Your honor, the standard is set forth in the Simmons case, which says that when affirmative defenses aren't properly pled, the court has discretion to determine whether to allow them to be raised at a later time. And here, ES repeatedly made a tactical decision not to seek leave to raise its affirmative defenses. KST raised a number of times that ES had not filed a responsive pleading. We raised it with the fact that they didn't file an answer in connection with our summary judgment briefing. We raised the fact that ES had waived its affirmative defense. There's no dispute though, is there, that these affirmative defenses were raised? They were not raised in pleading to the operative complaint. And again, here, this isn't the case where the court was siding. What was different about the operative complaint compared to the complaint in which they did respond? KST... What facts, were there any new facts that were alleged? KST alleged several additional facts about the relationship, the performance of the contract in its second amended complaint. At core, the contract claims were largely similar, but again, this is the district court expressly ordered ES to file a responsive pleading. It wasn't a case where the district court had left it ambiguous. And even after KST had raised the waiver of affirmative defenses multiple times, in the motion for entry of judgment, in response to KST's motion for entry of judgment, ES again made a tactical decision to argue only that the district court had somehow already ruled on its affirmative defenses. It would be one thing if ES had asked the district court for leave. The district court may have been in a position to address the equities between the parties and prevent prejudice to either side. For example, if KST didn't take discovery on ES's unclean hands defense, because it wasn't raised. But ES... Ms. Van Dyke, let me ask you this. You said that the district court ordered KST to file responsive pleadings. Is that correct? Or did the district court just say you have such and such a period of time within which to file a responsive pleading? And if I can follow up on Judge Pius's question, didn't the district court say you can file a responsive pleading if you can show a certain scenario of facts, which it could not. So wasn't the district court's invitation limited to a very narrow factual situation in directing that responsive pleading to be filed? So those were two different directions. So if the court doesn't mind, I'll address each of them. Go ahead. Judge Milgren, I'll address yours first. The court granted leave to amend in connection with ES, with the motions to dismiss ES's tort claims as untimely under California law. And the court gave ES leave to amend to assert that it had received, had knowledge of the arrangement between KST and DME later in time. Now, yes, the court articulated the timeliness issue as to ES's knowledge, but that's only because that was the only timeliness issue that was ever raised in the district court. ES never raised the fact that it believed it had other facts that it could plead if given leave to amend to establish the timeliness of its claims. So in the context, the court's grant of leave to amend certainly encompassed the allegation of facts that would show the claims were timely under California law, but even if it hadn't, ES never sought leave to amend to assert its additional facts. Now, as to the court's order on the motions to dismiss, the court ordered, the court gave KST a certain amount of time to file a second amended complaint and said, ES would order ES to file responsive pleadings within 10 days. ES then moved to dismiss on all claims but the breach of contract claim, but never answered the breach of contract. This wasn't a situation where the court was silent or the court ruled that ES could rest on its old pleadings. Okay. I let you go over time. So I'm gonna terminate this. Thank you. Thank you, your honor. And on behalf of KST and Mr. Tan, we respectfully request the court affirm the district court's opinion. Okay. Okay, Mr. Weiss, I'll have the clerk put two minutes on the clock for you.  Okay, Mr. Weiss, I'll have the clerk put two minutes on the clock for you. Mr. Tan. Thank you, your honors. There's just four points that I wanna make briefly here. First of all, we never waived our affirmative defenses. We were given leave under a factual stipulation that we could not meet to amend. We did not amend. At the end of the day, we filed a motion to dismiss. All that was left was the breach of contract. And we had clearly not once, but twice alleged our affirmative defenses there. Moreover, the Camarillo case, which we cite in our brief, clearly establishes that affirmative defenses can be pled at the summary judgment stage, which we could have done if we simply would have had noticed that the court was going to actually issue or consider issuing a motion for summary judgment. So that's my first point. My second point is that this is not a simple case. This is not some sensible business decision that was made. KST knew that what they were doing was not only wrong, but a serious violation of the contracts that they had with ES. The statement of work in section 1.1 clearly sets forth the purpose of the project as this statement of work, this is on ER 680, issued by HBES in support of the NASA ACES project. NASA Shared Services Center, the SOW describes the services to be provided by supplier to ES in support of the NASA ACES program. There is no question that they understood what this was about. And that's why that identification clause, which is very broad and applies to this as well, this willful misconduct, which is stipulated in the administrative agreement between NASA and KST at the further ER at page 28, clearly establishes a basis for these affirmative defenses, not to mention our counterclaims. The third point I would say is kind of related to the second point. When council argues that there's nothing in the contract, what more could ES have done? We make it clear that the contract and the services are related to the NASA project. We specifically spell out in section 4.2 of the resale master agreement in all caps that KST can do no work without the prior approval and without a purchase order. Number three, we spell out in section 2.13 that you cannot do any, 21.3, you cannot do anything which is illegal or contrary to law. And we spell out in the statement of work exactly what it's called for here. There is no way that ES could have fathomed what was going on here. They did everything they could in these contracts to make as material terms and elements of these contracts that the type of conduct that they engaged in was wrong and would be a breach of those contracts, not to mention form a basis for the affirmative defenses and the counterclaims. Your fourth point. I'm sorry. Fourth point. Your last point. My last point, your honor, is that simply because the investigation between the council for KST was successful in convincing DOJ not to pursue something and prove something beyond a reasonable doubt is in no way suggesting that somehow there was not willful misconduct here. That was only dismissed after this administrative agreement was entered into, again, FER 28, in which the NASA suspension was based on allegations that KST engaged in quote unquote serious misconduct. And you also have before you the findings of the district court. There is no question that we would have had material tribal issues of fact if this court, if the district court would have taken off its blinders or given ES its day in court and a chance to respond. Okay. Thank you, Mr. Larson. Thank you, council. We appreciate your arguments this morning. And again, I regret that I was late this morning  Thank you. Thank you, your honor.
judges: Paez, Melgren, Bade